FILED IN OPEN COURT
ON 10/6/26 cm
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:26-CR-205-M-RN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **INDICTMENT** |
| | ) | |
| JAMES THOMAS ASHBACHER | ) | |

The Grand Jury charges:

1. At all relevant times, Defendant JAMES THOMAS ASHBACHER ("ASHBACHER") was a resident of Spring Lake, Cumberland County, North Carolina.

2. Beginning in or about 2021, and continuing through at least on or about March 19, 2024, ASHBACHER was employed as a contractor with a private company that provides physical security and emergency management services for U.S. Government customers at the U.S. Army Special Operations Command (USASOC) facility in Fort Bragg, North Carolina. To perform the required functions of his employment, ASHBACHER held a security clearance that authorized him to view classified material up to the TOP SECRET / Sensitive Compartmented Information and had access to national defense and classified information.

## Classified Information

3. At all times relevant to this Indictment, Executive Order 13526

governed the classification of national security information. Information in any form may be classified if it: (1) is owned by, is produced by or for, or is under the control of the U.S. Government; (2) could, if disclosed, cause one or more specified levels of harm to the United States; and (3) is classified by or under an original classification authority ("OCA") who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security. OCAs, also called original classifiers, were individuals authorized to classify information and make classification decisions.

4. Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL." National security information was information owned by, produced by, produced for, and under the control of the United States government that was classified as follows:

a. Information was classified as TOP SECRET if the unauthorized disclosure of the information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify and describe.

b. Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe.

c. Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify and describe.

5. Under Executive Order 13526, "damage to the national security" meant harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information.

6. The classification marking "NOFORN" indicated that the information was "Not Releasable to Foreign Nationals" and dissemination of that information was limited to United States persons.

7. Pursuant to Executive Order 13526, information classified at any level could only be lawfully accessed by persons determined by an appropriate United States government official to be eligible for access to classified information, and who had a "need to know" the classified information and who had signed an approved non-disclosure agreement. Classified information could only be stored in an approved facility and container.

8. The USASOC was a part of the U.S. Department of Defense (DOD) (now Department of War), a U.S. executive branch agency whose mission was to provide the military forces needed to deter war and to protect the security of the United States.

**ASHBACHER's Transmission of National Defense Information on Social Media**

9. Because ASHBACHER held a security clearance and worked at an Army installation, ASHBACHER had access to sensitive government materials, including classified information and information relating to the national defense ("National Defense Information").

10. Over his years holding a security clearance, ASHBACHER received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. ASHBACHER knew that the unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore, could endanger the national security of the United States and the safety of its citizens. In particular, ASHBACHER had been advised and signed classified non-disclosure agreements in which he acknowledged that unauthorized disclosure of SECRET or TOP SECRET information reasonably could be expected to cause grave or exceptionally grave damage to the national security of the United States, respectively, and that violation of rule governing the handling of classified information could result in criminal prosecution.

11. Beginning at a time unknown, but no earlier than in or about 2021, and continuing through on or about March 19, 2024, ASHBACHER photographed and removed without authorization videos and photographs containing images of

classified military operations (the "Classified Materials"), including the materials listed in paragraph 16, below, and described further below in Counts One through Ten, and improperly retained and transmitted the Classified Materials on a particular social media site ("Social Media Site 1").

12. The information in the Classified Materials stolen and transmitted by ASHBACHER was classified at the SECRET level and included National Defense Information.

13. ASHBACHER uploaded the Classified Materials containing National Defense Information to Social Media Site 1, where they were visible to other users. By uploading the material to Social Media Site 1, ASHBACHER transmitted the National Defense Information therein to Social Media Site 1 users who were not entitled to receive it, including to users who re-posted the Classified Materials to a second social media site ("Social Media Site 2").

14. On or about February 2, 2024, in private messages on Social Media Site 1's platform, ASHBACHER asked another user to "remov[e] any mention" of certain information from a post and to "take 'em down, tuck them away, and repost them in a year or two when my contract ends lol." ASHBACHER further stated: "Just trying to save my ass. . . . It is what it is. . . ." and that he knew "a bunch of dudes probs saved everything but trying to do some damage control lol If not, it's all good bro, I understand. It was fun while it lasted. . . ."

15. On or about February 3, 2024, ASHBACHER deactivated his Social Media Site 1 account.

16. ASHBACHER willfully transmitted to Social Media Site 1 Classified Materials that contained National Defense Information, including the following videos, which were classified as SECRET:

a. Six videos that revealed unit-specific and sensitive tactics techniques and procedures and call signs associated to an organizational structure within a specialized military unit (VIDEO A through VIDEO F);

b. A video that reveals information about specialized Alternative Compensatory Control Measures Programs of the military (VIDEO G); and

c. Three videos that reveal various tactics techniques and procedures used by a specialized military unit and present risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated (VIDEO H through VIDEO J).

17. ASHBACHER knew that the stolen Classified Materials contained classified information that related to the national defense. ASHBACHER knew that disclosure of the Classified Materials could be used to the injury of the United States or to the advantage of a foreign nation.

18. ASHBACHER was never authorized to and knew that he was never authorized to take, retain, or transmit the Classified Materials or National Defense Information to individuals not entitled to receive such materials or information.

## The FBI Finds a Document Relating to the National Defense in ASHBACHER's Home

19. On or about April 30, 2025, the FBI executed a search warrant and seized material from ASHBACHER's residence located in the Eastern District of North Carolina. During the court-authorized search of ASHBACHER's home on April 30, 2025, the FBI seized a copy of what appeared to be a military award containing SECRET//NOFORN markings with ASHBACHER's name (the "Classified Award Document"). In reality, ASHBACHER was never given the Classified Award Document by the Department of War. However, the classified portions of the award are contained in similar awards awarded to members of the military.

20. The Classified Award Document related to the national defense and contained information classified as SECRET. That document is described in further detail below in Count Eleven.

21. ASHBACHER knew that the Classified Award Document contained classified information that related to the national defense. ASHBACHER was never authorized to retain the Classified Award Document at his residence. ASHBACHER knew that he was not authorized to remove national defense information from secure locations, and further that he was not authorized to retain the national defense information contained within the Classified Award Document at his residence.

## ASHBACHER's Theft of Night Vision Goggles from the USASOC

22. On or about April 30, 2025, during the execution of a search warrant on ASHBACHER's residence, FBI seized a night vision goggle system specific to a

military unit within the USASOC valued at approximately $40,000 that had been reported missing from the USASOC on or about January 10, 2024.

23. Also, on or about April 30, 2025, during a non-custodial voluntary interview of ASHBACHER at his residence that occurred in connection with the execution of the FBI search warrant on ASHBACHER's residence, ASHBACHER admitted to theft of the night vision goggle system.

## COUNTS ONE THROUGH TEN

24. The grand jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through twenty-three of the Indictment, and further alleges that:

25. Between on or about September 21, 2023, and February 3, 2024, in the Eastern District of North Carolina, and elsewhere, the defendant, JAMES THOMAS ASHBACHER, having unauthorized possession of, access to, and control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, willfully communicated, delivered, transmitted, or caused to be communicated, delivered, or transmitted, or attempted to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to a person or persons not entitled to receive it: to wit, ASHBACHER transmitted photographs and videos containing classified National Defense Information, including the videos described in paragraph 16, above, and listed below:

| COUNT | HIGHEST CLASSIFICATION LEVEL | DESCRIPTION |
| --- | --- | --- |
| ONE | SECRET | VIDEO A: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| TWO | SECRET | VIDEO B: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| THREE | SECRET | VIDEO C: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| FOUR | SECRET | VIDEO D: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| FIVE | SECRET | VIDEO E: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| SIX | SECRET | VIDEO F: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| SEVEN | SECRET | VIDEO G: Reveals information about specialized Alternative Compensatory Control Measures Programs of the military |

| | | |
|---|---|---|
| EIGHT | SECRET | VIDEO H: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| NINE | SECRET | VIDEO I: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |
| TEN | SECRET | VIDEO J: Reveals various tactics techniques and procedures used by a specialized military unit and presents risk of foreign adversaries creating a method to defeat or counter the capabilities demonstrated |

All in violation of Title 18, United States Code, Section 793(e).

## COUNT ELEVEN

26. The grand jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through twenty-three of the Indictment, and further alleges that:

27. Beginning at times unknown, and continuing until on or about April 30, 2025, in the Eastern District of North Carolina, and elsewhere, the defendant, JAMES THOMAS ASHBACHER, having unauthorized possession of, access to, and control over documents relating to the national defense, willfully retained the documents and failed to deliver them to any officer or employee of the United States entitled to receive them: to wit, ASHBACHER retained a document relating to the national defense at his residence without authorization, including the document

described in paragraph 20, above, and listed below:

| COUNT | HIGHEST CLASSIFICATION LEVEL | DESCRIPTION |
|---|---|---|
| ELEVEN | SECRET | DOCUMENT A: Reveals information about specialized Alternative Compensatory Control Measures Programs of the military |

All in violation of Title 18, United States Code, Sections 793(e).

**COUNT TWELVE**

28. The grand jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through twenty-three of the Indictment, and further alleges that:

29. Beginning in January 2024 and continuing until on or about April 30, 2025, in the Eastern District of North Carolina, and elsewhere, the defendant, JAMES THOMAS ASHBACHER, stole, purloined, or knowingly converted to his use or the use of another a thing of value of the United States or of any department or agency thereof, or any property being made under contract for the United States or any department or agency thereof: to wit, ASHBACHER stole a Night Vision Goggle system belonging to the U.S. Army's Special Operations Command.

All in violation of Title 18, United States Code, Sections 641.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense in violation of Title 18, United Code, Section 793(e) set forth in this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 793(h), any property constituting, or derived from, any proceeds obtained, directly or indirectly, from any foreign government, or any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, as the result of such violation.

Upon conviction of any offense herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1955(c)(7) and 1981(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

The defendant is, hereby, given notice that all the defendant's interest in the property specified herein is subject to forfeiture. Upon conviction of one or more of the offenses set fourth in Counts One through Twelve of this indictment, the defendant shall forfeit to the United States any and all property, real or personal, constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said offenses.

The forfeitable property includes, but is not limited to the following:

Personal Property:

a) One pair of Night Vision Goggles

b) Taurus G2C 9mm handgun, bearing serial number AEB117081, seized on April 21, 2025, from JAMES THOMAS ASHBACHER at 233 Eppingdale Drive, Spring Lake, North Carolina, 28390.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 793(h)(3) and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL

REDACTED VERSION

Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

FOREPERSON

10/6/2026

DATE

W. ELLIS BOYLE
United States Attorney

JOHN A. EISENBERG
Assistant Attorney General for National Security

BY: LOGAN W. LILES
Assistant United States Attorney

Leslie Esbrook
Trial Attorney
U.S. Department of Justice
National Security Division
Counterintelligence and Export Control Section